# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JOSEPH M. ADRIAN, ELAINE M.      :
ADRIAN, and ADRIAN FAMILY        :
PARTNERS I, L.P.,                :
                                 :
              Plaintiffs,        :
                                 :
      -against-                  :       <u>MEMORANDUM ORDER</u>
                                 :       03 Civ. 6604 (MDF)
TOWN OF YORKTOWN,                :
                                 :
              Defendants.        :
                                 :
------------------------------X

Mark D. Fox, United States Magistrate Judge.

In September 2003, Joseph and Elaine Adrian (the "Adrians")

and Adrian Family Partners I, L.P. ("Adrian Family Partners")

(collectively, the "Plaintiffs") commenced this action, pursuant

to 42 U.S.C. § 1983 and New York State law, against the Town of

Yorktown (the "Town"), alleging that the Town, through its Town

Supervisor, Linda Cooper, and other policy-making officials,

maintained an official policy to deny the Plaintiffs the right to

develop their property and to punish and retaliate against the

Plaintiffs for their exercise of their First Amendment rights.

The Town has filed a motion for summary judgment, seeking

dismissal of the Plaintiffs' complaint based on the statute of

limitations and the ripeness doctrine. Additionally, the Town

argues that the Plaintiffs' procedural due process claim should

be dismissed because the Plaintiffs failed to utilize the Article

U.S. DISTRICT COURT
FILED
APR 26 2006
W.P.
S.D. OF N.Y.

MICROFILM
APR 26 2006
USDC SDNY WP

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

1

78 procedure in New York state court and the substantive due process claim should be dismissed because the Plaintiffs lacked a vested property right.  It also seeks dismissal of the Plaintiffs' false arrest and malicious prosecution claims.  The Plaintiffs oppose the Town's motion.

## Background

### I.   Factual Background

The following facts are either undisputed or taken from the evidence submitted and viewed in the light most favorable to the non-moving party, here, the Plaintiffs.

#### A.   The Adrian Property

In 1986, the Adrians began to acquire parcels of C-3 commercially-zoned real property, located along Route 202 and Crompound Road in the Town, on which they planned to develop a restaurant and an "automobile mall," consisting of a car wash, car dealerships, and auto-related service facilities.  *See* Compl. ¶ 6.  By September 1987, the Adrians had acquired 10.3 acres of property by making the following purchases: 0.6 acre in June 1986 ("parcel A"); 1.2 acres in June 1986 ("parcel B"); 7.3 acres in October 1986 ("parcel C"); 0.2 acre in December 1986 ("parcel D"); 0.4 acre in December 1986 ("parcel E"); and 0.6 acre in August 1987 ("parcel F").  *See* "Chronology of Adrian Land Acquisition," dated 3/15/06 (attached to letter to Court dated 3/17/06).  All parcels were zoned "C-3" at the time of purchase,

with the exception of a 2.5 acre section of parcel C, which was zoned "R1-20" residential. *See* Defendant's Memorandum of Law at 4.

In November 1986, the Adrians submitted a site plan approval application to the Town Planning Board for construction of a car wash, an auto lube structure, and a 12,000 square foot commercial building on approximately two acres of the property. *See* Affidavit in Support of Motion for Summary Judgment, Ex. C (Plaintiffs' Response to Defendant's Interrogatories) at 3. In September 1988, the Planning Board approved construction of the car wash, but not the commercial building. *See id.* According to the Plaintiffs' Response to Defendant's Interrogatories, before the application was approved with respect to the car wash, they had submitted seven applications for site plan approval. *See id.*

In June 1992, the Adrians purchased two additional 0.85 acre unimproved parcels ("parcel G" and "parcel H"), which were contiguous with the 10.2 acres that they had previously purchased. *See* Defendant's Rule 56.1 Statement. Two years later, in March 1994, the Adrians purchased a 0.5 acre parcel of land adjacent to their property, which was improved with a 3,400 square foot auto body shop ("parcel I"). *See id.*; Compl. at ¶ 29; Affidavit in Support of Motion for Summary Judgment at attached timeline. The Adrians applied to the Town Planning Board in July 1994 for site plan approval to permit an expansion

3

of the auto body shop.  *See* Defendant's Rule 56.1 Statement; Compl. at ¶ 30; Affidavit in Support of Motion for Summary Judgment, Ex. C at 4.  According to the Plaintiffs, "the Town Planning Board, without any basis in law or fact, refused to process the application unless [the] Adrians also filed a plan to develop the adjoining 12 acres."  Compl. at ¶ 30.  *See* Adrian Affidavit at 4.  In their response to the Town's interrogatories, the Plaintiffs indicated that, between December 1995 and February 2001, the Adrians reapplied for site plan approval to expand the auto body shop eight times before a revised plan was finally approved.  *See* Affidavit in Support of Motion for Summary Judgment, Ex. C at 4.  *See also* Plaintiffs' Ex. 6.

In 1997, the Adrians transferred 10.2 acres of their property to Adrian Family Partners.  *See* Defendant's Rule 56.1 Statement.  In December 2000, these 10.2 acres were sold to ExxonMobil Corporation for $3,600,000.  *See* Defendant's Rule 56.1 Statement.  In January 2001, the Adrians purchased a 2.8 acre parcel improved with a 1,300 square foot structure.  *See* Defendant's Memorandum of Law at 3.

**B.   Wetlands Designation**

In 1987, the Adrians applied for a non-wetlands determination to the Town Board.  *See* Plaintiffs' Ex. 11 (Article 78 Petition).  After considering the Adrians' report and expert testimony, the Town Board adopted a "Wetlands Map," which

4

designated all of the Adrians' property as wetlands.  *See id.;*
Compl. at ¶¶ 12-13; Affidavit in Support of Motion for Summary
Judgment at attached timeline.  In May 1988, the Adrians filed an
application for a wetlands permit to prepare the property for the
proposed auto mall development.  *See* Plaintiffs' Ex. 33 at
application.  In a letter dated June 10, 1988, the Town stated
that, because it was in the process of determining whether to
rezone the entire area in which the Adrians property was
situated, it could not entertain the wetlands permit application.
*See id.* at 6/10/88 letter.

In March 1989, the Adrians filed an Article 78 proceeding in
supreme court, Westchester County, against the Town Board,
challenging the denial of their application for a non-wetlands
determination.  *See* Plaintiffs' Ex. 11.  The court granted the
Adrians' petition, finding that the Town Board's decision on the
Adrians' application was arbitrary and capricious and lacked a
rational basis.  *See* Plaintiffs' Ex. 16 (8/3/90 Decision and
Order).  The court remitted the matter to the Town Board for
further consideration and, specifically, to determine the "finite
boundaries" of the subject property.  *See id.*  According to the
Plaintiffs, the Town has yet to revise its Wetlands Map.  *See*
Compl. at ¶ 14.

**C.   <u>The Adrians' Challenge to Rezoning</u>**

In February 1989, the Adrians filed a complaint in supreme

court, Westchester County, against the Town, the Town Supervisor, and the Town Board, challenging the Town's enactment of Local Law No. 42 of 1988.  *See* Plaintiffs' Ex. 12 (Summons and Compl.). According to the Adrians' complaint, Local Law No. 42 amended "Subsection D of the Zoning Ordinance, entitled General District, Industry, by adding to Subsection D a new Special District entitled 'M-1B, Planned Light Industrial Districts (Special District).'"  *Id.*  The Adrians asserted that numerous sites adjacent to and near their property would qualify as Planned Light Industrial Districts and that such a designation and the industry that would follow would have an impact on the environment and their property.  *See id.*

In April 1989, the Adrians filed a second complaint concerning Local Law No. 42 after the Town had announced its intent to rezone a portion of their property from a C-3 Highway Commercial Zone and R1-20 Residential Zone to the new M-1B zone. *See* Plaintiffs' Ex. 13 (Summons and Compl.).  They asserted that the plan to rezone their property deprived them of their right to develop the property in accordance with the uses permitted in a C-3 zone.  *See id.*  They explained that, in connection with one of their applications for site plan approval for the auto mall, they had previously requested that a portion of their property be rezoned from a R1-20 zone to a C-3 zone.  *See id.*  The Adrians asserted that the Town Board had intentionally delayed in acting

6

on that request "while [it] secretly set about to change the zoning applicable to [that portion of their property], from 'R1-20' and 'C-3' zones, to a zone other than the 'C-3' zone required by [the Adrians] to develop the [a]uto [m]all." *Id.* Additionally, the Adrians made allegations in their complaint regarding James Criniti, who owned property across Old Crompound Road from the Adrians, and his allegedly illegal development of his property. *See id.* The Adrians stated that, despite the designation of Criniti's property as a one-family residential zone, he had erected a 2,500 square foot commercial garage with appurtenant gasoline pumps and tanks, cleared trees in a wetlands designated area, and added a second story to the commercial garage. *See id.* They further alleged that Criniti had illegally rerouted a stream from his property to their property. *See id.* The Adrians claimed that the Town had sought to rezone the area within which their property and the Criniti property was located to the new M-1B zone "as a personal favor to Criniti, was an attempt to legalize Criniti's illegal uses of his property and, simultaneously, to deprive [them] of their vested rights in their property."[1] *Id.*

### D.  **The Adrians' Lawsuit Against James Criniti**

In May 1989, the Adrians commenced an action against Criniti

---

[1]  According to the Plaintiffs' complaint, the April 1989 "Vested Rights lawsuit" "ended in success for the Adrians." Compl. at ¶ 26.

asserting claims of nuisance and trespass with respect to, *inter alia*, the alleged diversion of a stream on to their property, the construction of the commercial garage, and the installation of underground gasoline and diesel tanks. *See* Plaintiffs' Ex. 14 (Summons and Complaint). Between May 1989 and October 1989, the Adrians wrote three letters to the Town Building Inspector, William Gregory, complaining of Criniti's allegedly illegal use of his property and accusing Gregory of being "derelict in [his] duties" as the Town Building Inspector for permitting Criniti's activity. Plaintiffs' Ex. E (letters dated 5/1/89, 7/6/89, 10/26/89).

### E. Stony Street Realignment Project

In October 1992, the Adrians entered into an agreement with the Town and Howard and Iris Levine (the "Levines") to relocate Stony Street, which ran along the Levine's property, from its intersection with Route 202 and Crompound Road to a single integrated intersection with Old Crompound Road, Route 202, and the shopping center on the south side of Route 202. *See* Plaintiffs' Ex. 36 (Agreement). Pursuant to this agreement, both the Levines and the Adrians agreed to convey portions of their properties to the Town and Adrian agreed to pay to the Town $150,000 as mitigation for their own commercial development. *See id.* In addition, the Adrians acquired a 0.4 acre parcel of land from the Levines in connection with the project. *See* "Chronology

of Adrian Land Acquisition" dated 3/15/06 (attached to letter to
Court dated 3/17/06).  The new Stony Street and the new Old
Crompound Road were built on the land that the Adrians and the
Levines deeded to the Town.  *See* Defendant's Memorandum of Law at
4.  According to the Plaintiffs' complaint, their obligation to
pay the mitigation costs never matured and the Town never
demanded the money.  *See* Compl. at ¶ 21.

**F.    Stop & Shop Site Plan Approval Application**

After the Adrians transferred 10.2 acres of their property
to Adrian Family Partners in 1997, Adrian Family Partners entered
into leases with Verticon and ExxonMobil.  *See* Defendant's Rule
56.1 Statement at ¶ 10.  Verticon subsequently entered into a
sub-lease with Stop & Shop Supermarkets and submitted a proposal
to the Town for a Stop & Shop development project on the
property.  *See id.*

According to the Town's memorandum of law in support of its
motion, in April 1999, it discovered that the Adrians had never
paid the $150,000 that they had agreed to pay as part of the
Stony Street realignment project.  *See* Memorandum of Law in
Support of Motion to Dismiss at 7.  The Town took the position
that they would not pass on the Stop & Shop application until the
$150,000 was paid and, thus, demanded payment from the Adrians.
*See id.*  In November 1999, the Adrians sent a check in the amount
of $150,000 to the Town.  *See id.*; Adrian Affidavit at ¶ 40.  A

9

note on a photocopy of the Adrians' check states, "Received
11/1/99 12:35 PM from E & J Adrian for Stony St. and Old
Crompound Rd. Realignment with Route #202."   Plaintiffs' Ex. 1.

In March 2000, the Town Planning Board issued a Findings
Statement pertaining to the project, as required by the New York
State Environmental Quality Review Act.   *See* Plaintiffs' Ex. 5
(Findings Statement).   In the Findings Statement, the Town
imposed certain conditions for approval of the project,
including, *inter alia*, that the applicant (Verticon) engage in
dredging of Mill Pond, install sidewalks along Route 202, use a
new technology to treat stormwater runoff from the roof drains,
provide for thermal monitoring of the Hunterbrook Stream, and set
aside adjoining development land not owned by the applicant and
refrain from proceeding with any development on such property for
a period of five years.   *See id.*; Affidavit of Ronald A. Freeman
at ¶ 3.   Before the Town Planning Board's final vote, which was
scheduled for March 18, 2000, Verticon withdrew its application
for site plan approval.   *See* Adrian Affidavit at 4; Defendant's
Rule 56.1 Statement at ¶ 11; Affidavit in Support of Motion for
Summary Judgment at Ex. C (Plaintiffs' Response to Defendant's
Interrogatories) at 10-11.

G.   **Hunterbrook Sewer District**

In his affidavit, Joseph Adrian states that, in connection
with the Stony Street realignment project, plans were drawn up to

10

include the Adrians' property in the Peekskill Sanitary Sewer
District, which included the area now known as the Hunterbrook
Sewer District.  *See* Adrian Affidavit at ¶ 34.  In October 1993,
Westchester County approved the plans for installation of the
sewer.  *See* Plaintiffs' Ex. 35 (10/22/93 Letter).  Sewer lines
were extended to the property in 1995, but the Adrians' could not
connect to the sewer until the Lakeside Pump Station was built.
*See* Adrian Aff. at ¶ 34.  Upon completion of the Lakeside Pump
Station in 1999, the Adrians sought to be connected to the
Hunterbrook Sewer District.  *See id.* at ¶ 35; Plaintiffs' Ex. 37
(6/00 and 10/00 memos to Town Engineer from Joseph Adrian).  In
his June 2000 memorandum to Dan Ciarcia, the Town Engineer,
Joseph Adrian asked Ciarcia to contact him as soon as possible
regarding a connection to the Hunterbrook Sewer Extension,
stating, "We don't want to be left out this time, as we were
again in 1/00, when 18 additional properties were included in the
Peekskill Sewer Dist[rict]."  Plaintiffs' Ex. 37 (6/00 memo).
According Adrian, in October 2000, he and his wife were informed
that they would not be permitted to connect to the Hunterbrook
Extension.  *See id.*  However, in June 2001, after the Plaintiffs
sold the majority of their property, they were granted a Sanitary
Sewer Connection Permit allowing them to connect to the
Hunterbrook Extension.  *See* Plaintiffs' Ex. 38 (Permit).

**H.   The Town's Enforcement of Local Laws Against the Adrians**

In this lawsuit, as part of their equal protection claim, the Plaintiffs assert that the Town selectively enforced certain local laws by issuing orders to remedy violations and summonses to them while permitting other property owners to make illegal use of their land.  In April 1991, the Town issued an Order to Remedy Violation to Joseph Adrian for altering the drainage pattern on his property in violation of the Freshwater Wetlands & Drainage Law.  *See* Plaintiffs' Ex. 7 (Order to Remedy Violation). In April 1994, the Town Environmental Inspector, Nicholas Bianco, issued a summons to Raymond Doria and Doria Excavation for pumping water from the Adrian Auto Body Shop into Hunterbrook Stream.  *See* Plaintiffs' Ex. 8 (Summons).  Bianco issued another Order to Remedy Violation to Joseph Adrian and Adrian Auto Body Shop in August 1994, directing Adrian to remove debris from the wetlands buffer on his property and to restore the soil that had been removed.  *See* Plaintiffs' Ex. 9 (Order to Remedy Violation). On February 3, 2000, Bruce Barber, an Environmental Code Officer with the Town, issued a summons to the Adrians for violating the Freshwater Wetlands Law.  *See* Plaintiffs' Ex. 10 (Summons).  The summons charged the Adrians with "draining, dredging, excavation or removal of material" and "[i]ntrusion of any pipes or wells within a wetland and/or wetland buffer without a permit."  *Id.* On December 21, 2000, the charges against the Adrians were

12

dismissed.   *See* Supplemental Adrian Affidavit at attached
Yorktown Justice Court Case History Listing.

**I.    October 2002 Article 78 Petition**

In October 2002, Adrian Family Partners commenced an Article
78 proceeding against the Town Zoning Board of Appeals; the
estate of James Criniti; DMB Realty, LLC, the contract vendee
under contract with Criniti's estate to purchase the Criniti
property; and John Bauso, a principal of DMB Realty.   *See*
Plaintiffs' Ex. 15 (Art. 78 Petition).   In its petition, Adrian
Family Partners challenged the September 2002 decision of the
Zoning Board of Appeals to grant a use variance to DMB Realty,
which permitted Bauso to park commercial vehicles in the
commercial garage that Criniti had built on an area of his
property that was zoned for residential use.   *See id.*  The Town
moved to dismiss Adrian Family Partners' petition, arguing that
the action was time-barred and that Adrian Family Partners lacked
standing.   *See* Plaintiffs' Ex. 22 (Motion to Dismiss).   In a
December 2002 decision, the supreme court denied the Town's
motion to dismiss and, on June 9, 2003, the court granted Adrian
Family Partners' petition, set aside the use variance due to
insufficient details in the record to determine whether the
decision was supported by substantial evidence, and remitted the
matter to the Zoning Board of Appeals.   *See* Plaintiffs' Ex. 23
(12/10/02 Decision and Order and 6/9/03 Decision and Order)

13

**J.    Adrians' Complaints to Town about Neighboring Properties**

Since approximately 1989, the Adrians have made numerous complaints to the Town regarding the alleged illegal use of property by neighboring landowners.  In addition to the complaints that they raised with respect to the Criniti property, the Adrians made several complaints regarding Richard DeCola's excavation and contracting business located on property across Route 202 from the Adrians' property.  In a November 19, 2002 letter to the Town Board, Adrian asserted that approval of DeCola's request for rezoning of 7.3 acres of his property from R1-20 residential to C-3 commercial for the purpose of erecting a self-storage warehouse facility in 1994 was fraudulently obtained in order to run an illegal excavation and contracting business involving the storage of sand and gravel, which contaminated Sherry Brook.  *See* Plaintiffs' Ex. 26 at 11/19/02 letter.  Adrian alleged that, since 1996, officials of the Town have been unconcerned with DeCola's illegal activities and the resultant contamination of Sherry Brook.  *See id*.  Numerous letters from Adrian raising similar concerns about the DeCola property followed in 2003.  *See* Plaintiffs' Ex. 27-29.

The Adrians also raised complaints to the Town Board regarding two housing subdivisions located uphill from their property, Bethel Acres West and Park Lane Estates.  In letters to the Town Board, the Adrians asserted that, despite their location

14

in the sewer district, the homes in Bethel Acres West never hooked up to the Town sewer lines as required. *See* Plaintiffs' Ex. 28 (letters dated 1/7/03, 1/21/03, and 5/20/03), 29 (letters dated 5/6/03 and 5/20/03). They also challenged the Town's plan to create a new sewer district extension for three lots in Bethel Acres West. *See id.* The Adrians further complained that, since 1988, the developers of Bethel Acres West and Park Lane Estates, failed to install on/off-site water detention systems in accordance with the Town's requirements, which caused flooding to portions of their property. *See id.* In his letter to the Town dated January 7, 2003, Joseph Adrian stated that he had "requested Daniel Ciarcia, Town Engineer, on at least 50 occasions from 1988 to enforce the detention system requirements." Plaintiffs' Ex. 28 (Letter dated 1/7/03).

The Adrians have also raised complaints to the Town regarding the amount of sewage discharged into the Hunterbrook Stream watershed by certain businesses on Crompound Road. In an April 2003 letter, Joseph Adrian informed the Town that, during an appraisal that he had conducted of the Parkside Corner Shopping Center, located at 3566 Crompound Road, he discovered that, in violation of the septic system permit for the property, the owners of the shopping center employed over 50 employees, had over 80 seats in the restaurant, failed to install water flow meters for each food service establishment in the shopping

15

center, and exceeded the water usage allowed by the permit.  *See*
Plaintiffs' Ex. 30 at 4/1/03 letter.  In an April 15, 2003 letter
to the Town, the Adrians asserted that five other restaurants on
Crompound Road did not have "NYS DEC State Pollutant Discharge
Elimination" permits or Westchester County Health Department
approvals and utilized "illegal septic systems."  Plaintiffs' Ex.
32 (letter dated 4/15/03).  Finally, in a May 2003 letter to the
Town, the Adrians claimed that the Tuscan Market & Café building,
located at 3605 Crompound Road, had been expanded in violation of
Town laws and that the Town Building Inspector had issued an
illegal building permit allowing an addition to the restaurant.
*See* Plaintiffs' Ex. 31 at 5/6/03 letter.

## II.  **Complaint**

On September 2, 2003, the Plaintiffs commenced this action
against the Town asserting claims under 42 U.S.C. § 1983 and New
York state law.  They claim that they "have been subjected to a
pattern of arbitrary and illegal regulatory decisions, criminal
prosecution and selective interpretation and enforcement of the
law, to the point where they have lost a multi-million dollar
parcel of prime real estate" and that the Town adopted "an
unwritten . . . policy that [P]laintiffs' property would remain
forever 'open space' and unbuildable."  Compl. at ¶ 1.

In support of this overarching claim, the Plaintiffs make
numerous specific allegations.  They first allege that the Town

16

has prevented them from developing their property by designating the area in which their land is situated as wetlands and by not revising its Wetlands Map in accordance with the state court's decision on the March 1989 Article 78 proceeding brought by the Plaintiffs. *See id.* at ¶¶ 11-18.

The Plaintiffs next allege that their obligation to pay $150,000 in mitigation costs as part of the agreement regarding the Stony Street realignment project never matured and that the $150,000 payment they eventually made in November 1999 was paid to continue the process of securing site plan approval for the Stop & Shop development project. *See id.* at ¶¶ 19-23. The Plaintiffs claim that, because approval for the Stop & Shop project was never granted, the Town must refund the $150,000 to the Plaintiffs. *See id.*

With respect to their application for site plan approval to expand the auto body shop, the Plaintiffs allege that the Town repeatedly refused to process the application in order to deprive them of their right to develop the property and they were denied the opportunity for a hearing. *See id.* at ¶¶ 29-33.

The Plaintiffs further allege that, by imposing a host of conditions and restrictions before approving the site plan for the Stop & Shop project and doing so "without prior warning for 2-1/2 years," the Town substantially impaired the value of their property. *See id.* at ¶ 35. They claim that, "[b]ased upon past

17

litigation, [P]laintiffs had a clear entitlement to a site plan
free of such restrictions." *Id.*

The Plaintiffs also make numerous allegations with respect
to the uses made by neighboring landowners to their properties.
These allegations are consistent with the complaints the
Plaintiffs raised in their various state court proceedings and
through their correspondence with the Town.  In essence, the
Plaintiffs claim that the Town permitted Criniti, Bauso and DMB
Realty, and DeCola to violate the zoning and wetlands laws by
conducting commercial activity on their residentially zoned land
and permitted certain businesses on Crompound Road to exceed the
amount of sewage discharge allowed by their permits.  They also
allege that the Town has refused to enforce local and state laws
requiring mitigation of stormwater runoff against Bethel Acres
West and Park Lane Estates.  *See id.* at ¶¶ 89-91.  They claim
that the Town never required the developers of these subdivision
to install on/off-site water detention systems and that this has
resulted in flooding of the Plaintiffs' property.  *See id.*

Next, the Plaintiffs assert that, in October 2000, they
submitted a site plan for re-approval of the car wash and, "[i]n
a departure from Town policy," the Town Building Inspector
declined to review or comment on the plans.  *See id.* at ¶ 78.
According to the Plaintiffs, at a September 24, 2001 Town Board
meeting, the Town reviewed the site plan and informed the

18

Plaintiffs that, although they had initially received approval for the car wash in September 1988, car washes were not a permitted use in the C-3, Highway Commercial zone. *See id.* The Plaintiffs further allege that the Building Inspector has failed to provide a written interpretation or opinion as required and as requested by the Plaintiffs. *See id.* at ¶¶ 79-80.

The Plaintiffs further allege that the Town's refusal to allow them to join the Hunterbrook Sewer District until after they sold their property to ExxonMobil depressed the value of their property, made financing more difficult, and impaired the development potential of the property. *See id.* at ¶ 104.

With respect to the February 2000 summons that the Town issued to the Adrians, the Plaintiffs assert that Barber, the Environmental Code Enforcement Officer, prepared the summons knowing that the charges were false. *See id.* at ¶¶ 111-12. The Plaintiffs claim that, after they leased the property to Yorktown Properties/Stop & Shop Supermarkets in December 1997, they had no control over what occurred on the property. *See id.* According to the Plaintiffs, Tim Miller, the planner hired by the land tenant for the Shop & Stop development, took responsibility and, one week before the charges were filed, informed Barber that he had mistakenly thought that he had the necessary permit from the Town to conduct a small number of test holes for the proposed supermarket foundation. *See id* at ¶ 113.

Finally, the Plaintiffs allege that the Town Supervisor, Linda Cooper, has denied every request that they have made under the Freedom of Information Law ("FOIL") and has failed to send letters of denial as required by law. *See id.* at ¶ 126. They claim that Cooper has refused to act on their FOIL requests in order to avoid litigation and "in retaliation to punish [P]laintiffs." *Id.* at ¶ 127.

As a first cause of action, the Plaintiffs claim that the Town violated their rights to equal protection under the law through "selective application and enforcement of the law, as compared to others similarly situated." *Id.* at ¶ 134.

The Plaintiffs next assert a procedural due process claim, alleging that they "were deprived of notice and a hearing in regard to [the Town]'s decision to confiscate [P]laintiffs' property without [j]ust [c]ompensation." *Id.* at ¶ 139.

The Plaintiffs' third cause of action alleges that the Town retaliated against them for exercising their First Amendment rights. *See id.* at ¶¶ 141-47. They allege that, during the 1991 local elections and again during the 1993 elections, they posted signs on their property in favor of the candidates running against Town Supervisors Nancy Elliott and Linda Cooper. *See id.* The Plaintiffs claim that, since the November 1993 election, "the policy-making officials of the . . . Town made a decision that the Adrians would never be given any legal right to which they

20

were entitled." *Id.* at ¶ 145.

As for a fourth cause of action, the Plaintiffs claim that the Town violated their rights to substantive due process. *See id.* at ¶¶ 148-50. They state, "Plaintiffs had valid property interests entitled to constitutional protection, including the right to develop their property[,] the right to connect to a public sewer[,] the right to have mitigation deposits returned[,] the right to be free of patently illegal prosecutions, and the right to be treated equally under the law." *Id.* at ¶ 149.

The Plaintiffs fifth and sixth causes of action raise claims of false arrest and malicious prosecution arising out of the summons issued to them by Barber, the Environmental Code Officer, in February 2000. *See id.* at ¶¶ 151-63.

Next, the Plaintiffs assert a claim of taking without just compensation under the Fifth and Fourteenth Amendments.

Finally, the Plaintiffs assert claims for *de facto* condemnation and money had and received under New York state law. *See id.* at ¶¶ 166-67, 171-73. In addition, the Plaintiffs seek, under New York state law a declaratory judgment stating that they have the right to construct a car wash on the parcel of land on which the auto body shop is located. *See id.* at ¶¶ 168-70.

## III. <u>The Town's Motion to Dismiss</u>

In November 2005, the Town filed a motion for summary judgment seeking dismissal of the Plaintiffs' complaint. *See*

21

Notice of Motion.   The Town seeks dismissal on the following
grounds: (1) the Plaintiffs' § 1983 claims are barred by the
applicable statute of limitations; (2) Plaintiffs' claims for
violations of substantive and procedural due process and their
right to equal protection, taking without just compensation, and
*de facto* condemnation, all of which are premised on the
contention that Plaintiffs were unable to commercially develop
their property, must be dismissed pursuant to the ripeness
doctrine; (3) the procedural due process claim should be
dismissed because the Plaintiffs failed to raise this claim in an
Article 78 proceeding in state court; and (4) Plaintiffs'
substantive due process claim should be dismissed because no
vested property right exists in circumstances where the Town
allegedly ignored Plaintiffs' requests and applications.   *See*
Notice of Motion and Defendant's Memorandum of Law.

## **Analysis**

## I.    **Summary Judgment Standard**

     Rule 56 of the Federal Rules of Civil Procedure provides
that summary judgment "shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, and
admissions on file together with affidavits, if any, show that
there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."   Fed.
R. Civ. P. 56(c); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202

(2d Cir. 1995).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  In order for there to be a genuine issue for trial, there must be sufficient evidence in the record to support a jury verdict in the non-moving party's favor. *See id.* at 249.  When making a summary judgment determination, "the court must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

In opposing a motion for summary judgment, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Mere conclusory allegations and denials are insufficient to create a genuine issue of fact; rather, the opposing party must set forth "concrete particulars" showing that a trial is necessary.  *BellSouth Telecommunications, Inc. v. W.R.*

*Grace & Company-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996)(internal quotations omitted).

## II.   **Statute of Limitations**

For statute of limitations purposes, § 1983 claims are best characterized as personal injury actions; therefore, a state's personal injury statute of limitations should be applied to all § 1983 claims. *See Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994). In New York, the residual statute of limitations for personal injury claims is three years. *See* N.Y. C.P.L.R. § 214(5). The Supreme Court has held that, while New York has other statutes of limitations for intentional tort claims, the general three-year limitations period must be applied to all § 1983 claims brought in New York. *See Owens v. Okure*, 488 U.S. 235, 250-51 (1989).

While state law governs the limitations period for § 1983 claims, federal law governs when causes of action under § 1983 accrue. *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). When a plaintiff's § 1983 claims allege harms resulting from a municipal "policy or custom" pursuant to *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978), like those raised by the Plaintiffs in the instant case, "a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or

24

custom.'" *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir.
1995).  Indeed, in *Singleton v. City of New York*, 632 F.2d 185,
192-93 (2d Cir. 1980), the Second Circuit held that "[w]here no
single act is sufficiently decisive to enable a person to realize
that he has suffered a compensable injury, the cause of action
may not accrue until the wrong becomes apparent."  In these types
of cases, the time at which the plaintiff knew or should have
known that he had suffered a compensable injury is a question of
fact that may be properly submitted to a jury.  *See Eagleston v.
GuidoI,* 41 F.3d 865, 871 (2d Cir. 1994)("[I]n some circumstances,
factual issues related to statute of limitations should be put
before a jury.").  A court may, however, properly determine the
timeliness of a cause of action on summary judgment "if no
rational jury could find that the action was filed within the
statutory limitations period."  *Devito v. Incorporated Village of
Valley Stream*, 991 F.Supp. 137, 141 (E.D.N.Y. 1998).

In their equal protection claim, the Plaintiffs allege that
the Town arbitrarily enforced its zoning and wetlands laws
against them while allowing others similarly situated, namely
Criniti, DeCola, Bauso and DMB Realty, and the Crompound Road
businesses that were polluting the Hunterbrook watershed, to make
illegal use of their property.  *See* Compl. at ¶¶ 40-43, 45-74,
82-88.  The Plaintiffs further allege that the Town's refusal to
enforce the laws concerning stormwater runoff against the

25

properties located uphill from their property - Bethel Acres West and Park Lane Estates – violated their equal protection rights. *See id*. at ¶¶ 89-91.  In addition, the Plaintiffs claim that the Town's denial of their request to join the Hunterbrook Sewer District violated their rights to equal protection under the laws because, during the time that they were not permitted to join the district, "numerous other similarly-situated persons were allowed to join the district."  *Id.* at ¶ 104.

With respect to their procedural due process claim, the Plaintiffs assert that they were not afforded notice and a hearing before the Town took the actions which they allege resulted in a taking of their property.  As for their substantive due process claim, the Plaintiffs allege that the Town arbitrarily and maliciously took action against them which deprived them of numerous protected liberty interests, including, the right to develop their property, the right to connect to a public sewer, the right to the return of their mitigation payment, the right to be free of unlawful prosecution, and the right to be free from selective enforcement of the laws.  *See id*. at ¶ 149.

The Plaintiffs also allege that the decisions made by Town officials that resulted in the deprivation of their right to develop their property were done in retaliation for posting certain political signs during the 1991 and 1993 Town elections.

Additionally, the Plaintiffs have asserted claims of false arrest and malicious prosecution under § 1983.

The Plaintiffs' equal protection, due process, retaliation, and takings claims all arise out of the same events and are based on an alleged policy of the Town to deprive the Plaintiffs of their property rights and to retaliate against them for their exercise of free speech.  It is undisputed that nearly all of the alleged actions taken by the Town that the Plaintiffs claim caused harm to the value of their property and deprived them of their rights occurred prior to the statute of limitations period for this case.  These alleged actions include: (1) the denial of the Adrians' request for a non-wetlands designation in 1987, *see* Plaintiffs' Ex. 11 (Article 78 Petition), Compl. at ¶¶ 12-13; Affidavit in Support of Motion for Summary Judgment at attached timeline; (2) the denial of a wetlands permit in June 1988, *see* Plaintiffs' Ex. 33 at 6/10/88 letter, and the denial of numerous other requests for wetlands permits from 1990 to December 2000, *see* Compl. at ¶ 38, Plaintiffs' Memorandum of Law at 16; (3) the payment of $150,000 in mitigation by the Adrians in April 1999 and the refusal to refund the payment upon the withdrawal of the application for site plan approval for the Stop & Shop project in March 2000, *see* Adrian Affidavit at ¶¶ 40-41; (4) the imposition of certain conditions by the Town for approval of the Stop & Shop project site plan approval in March 2000, which led to the

27

withdrawal of the application; (5) the refusal to permit the Plaintiffs to join the Hunterbrook Sewer District in January 2000, *see* Plaintiffs' Ex. 37 at 6/00 memo; (6) the issuance of orders to remedy violation in April 1991 and August 1994 and the issuance of a summons in February 2000; (7) the failure of the Town since 1988 to require the installation of water detention systems at Bethel Acres West and Park Lane Estates, *see* Plaintiffs' Ex. 28 at letter dated 1/7/03; and (8) the repeated refusal to process the Adrians' site plan approval applications for expansion of the auto body shop from July 1994 to February 2001, *see* Adrian Affidavit at 4; Affidavit in Support of Motion for Summary Judgment, Ex. C at 4; Plaintiffs' Ex. 6.

However, as stated above, § 1983 claims alleging harms resulting from a municipal policy accrue when it is clear, or should be clear, that the harmful act is the consequence of a municipal policy. Thus, the key issue with respect to all of these claims is when the Plaintiffs knew or should have known of this alleged policy of the Town to deprive them of their right to develop their property and to retaliate against them. In response to the Town's position regarding the statute of limitations, the Plaintiffs argue that they did not become aware of the Town's policy until "late 2000, after the Adrians finally got a meeting with Supervisor Cooper, and in 2003, when they learned . . . that various Town officials - principally Nicholas

28

Bianco and Bernard Grossfield – were bent on not allowing any development of the property." *See* Plaintiffs' Memorandum of Law at 18-19.   In support of this position, the Plaintiffs have submitted an affidavit of Joseph Adrian, in which he states, *inter alia*, that, during the three years prior to the filing of this action, he learned several facts that caused him to believe that the Town's actions rose to the level of a constitutional violation, including: (1) that, after the charges against him and his wife were dismissed, the Town never sought to issue a summons against Tim Miller, the individual who had admitted to drilling the test holes on the property in violation of the wetlands law; (2) that, in 1994, the then chairman of the Planning Board had stated, "Adrian won't get any approvals as long as I'm on this [Planning] Board.   I don't like him"; (3) that they were not permitted to join the Hunterbrook sewer district; and (4) that, when the Town Board refused to let them join the sewer district, Bianco stated, "We don't want Adrian in the sewer district, because then, he'll think he has a right to develop the property."   Adrian Affidavit at ¶¶ 18-24.   Adrian further claims that, after the sale of the property in December 2000 to ExxonMobil, he conducted his own investigation and learned that other property owners were not subjected to the same treatment from the Town as he and his wife.   *See id.* at ¶ 25.   According to the Plaintiffs, whether it was reasonable for them to not

discover the Town's policy sooner is a question of fact that should be submitted to the jury. *See id.* at 19.

At this juncture, the Court is unable to conclude that there is no genuine issue of material fact as to when the Plaintiffs discovered or should have discovered that the Town's actions with respect to their property were taken pursuant to an official policy designed to retaliate against them and deprive them of their property rights. Adrian's specific allegations in his affidavit suffice to create a genuine issue of material fact and, therefore, the Town's motion for summary judgment on this basis is denied.

## III. **Ripeness**

The Town asserts that the Plaintiffs' claims of equal protection and substantive and procedural due process violations, taking without just compensation, and *de facto* condemnation must be dismissed because they are not ripe for review in federal court. In land use cases, the Supreme Court has developed a two-pronged inquiry for determining whether a claim is ripe. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). A court must determine, first, whether the government entity has made a "final decision" on the matter, and second, whether the plaintiff has exhausted state procedures for obtaining just compensation. *See id.* at 186, 194. In *Williamson*, the two-pronged ripeness test was applied to a

30

takings claim; however, it is well-settled that the same test applies to due process and equal protection claims that arise "in the context of land use challenges." *See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). *See also Rivervale Realty Co., Inc. v. Town of Orangetown*, 816 F.Supp. 937, 943 (S.D.N.Y. 1993)(noting that both prongs of the *Williamson* ripeness test apply to due process, equal protection, and takings claims). In *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84 (2d Cir. 1992), the Second Circuit distinguished between two types of substantive due process claims in land use cases and explained to what extent the *Williamson* ripeness applies to each one. Where a plaintiff brings a substantive due process claim premised on the theory that a regulation has gone so far that it effects a taking by eminent domain that exceeds the government's police power, both prongs of the *Williamson* ripeness test apply. *See id.* at 96. The Court reasoned that, "[i]f the state provides an acceptable procedure for obtaining compensation, the state's regulatory action will generally not exceed its police powers." *Id.* With respect to the second type of substantive due process claim, the Court held that, because the requirement that a plaintiff first seek compensation in state court is derived from the Takings Clause, a substantive due process claim based on arbitrary and capricious conduct of the government is subject only to the first prong of

31

the *Williamson* ripeness test.  *See id.* at 97.

A.   **Final Decision**

"In order to have a final decision, 'a development plan must be submitted, considered, and rejected by the governmental entity.'" *Goldfine v. Kelly*, 80 F.Supp.2d 153, 159 (S.D.N.Y. 2000)(quoting *Unity Ventures v. Cty. of Lake*, 841 F.2d 770, 774 (7th Cir. 1988)).  Such a decision will not be deemed final, however, until the plaintiff also seeks variances that will allow it to develop the property.  In *Williamson*, the Supreme Court found that the landowner had not obtained a final decision for ripeness purposes because, although the County Planning Commission had rejected its subdivision plan based on noncompliance with the zoning ordinance and subdivision regulations, the landowner had not sought variances from either the Planning Commission or the Zoning Board of Appeals.  *See Williamson*, 473 U.S. at 193-94.  The Court held that "the Commission's denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision."  *Id.* at 194.

The Plaintiffs' complaint alleges that, over the course of approximately 15 years, the Town made numerous decisions with respect to their property that resulted in the deprivation of their right to develop the property and that these decisions were

made pursuant to a policy of the Town to punish them for exercising their free speech rights and to deprive them of their rights.  The alleged actions by the Town of which the Plaintiffs complain include: (1) the denial of their request for re-approval of the car wash; (2) the denial of their application to expand the auto body shop; (3) the denial of their request to connect to the Hunterbrook sewer extension; (4) the imposition of various conditions before approval of the Stop & Shop site plan approval application; and (5) the refusal of the Town to refund the $150,000 mitigation payment.  In determining whether the Town made a "final decision" with respect to the Plaintiff's development rights, each of these actions will be considered in turn.

### 1.   Application for Re-Approval of Car Wash Plan

With respect to the Town's alleged denial of their request for re-approval of their plans to construct a car wash on the property, the Plaintiffs claim that, at a September 2001 Town Board meeting, their formal site plan was reviewed and rejected on the ground that a car wash was not a permitted use in a C-3 commercial zone.  *See* Compl. at ¶ 78.  Documents submitted by the Plaintiff indicate that their application for approval of the car wash was on the agenda of the Town Planning Board's September 24, 2001 meeting, however, other than Joseph Adrian's affidavit, there is nothing in the record to show that a final decision was

ever reached on the application.  *See* Plaintiffs' Ex. 2 (Work
Session Agenda).  In fact, the record reveals that, as of May
2002, the Plaintiffs' were still awaiting a decision on their
application.  *See* Plaintiffs' Ex. 21 (letters dated 12/14/01 and
5/24/02); Affidavit in Support of Motion for Summary Judgment,
Ex. F (letter dated 5/3/02).  Based on this record, the Court
cannot find that the Town ever reached a final decision with
respect to the Plaintiff's request for re-approval of the car
wash site plan.

2.    **Application to Expand the Auto Body Shop**

The Plaintiffs contend that the Town's refusal to process
their application to expand the auto body shop constituted a
final decision that they should be permitted to challenge in this
lawsuit.  In his affidavit, Joseph Adrian states, "The Planning
Board simply refused to place this item on the agenda,
unreasonably stalling our ability to make any economically viable
use of our property."  Adrian Affidavit at ¶ 4E.  The record
reveals that the Plaintiffs first sought approval for the
expansion in July 1994 and that approval for the expansion was
granted to the Plaintiffs in February 2001.  *See* Affidavit in
Support of Motion for Summary Judgment, Ex. C at 4 (Plaintiffs'
Response to Defendant's Interrogatories).  Accordingly, to the
extent that the Plaintiffs' § 1983 claims are based on the Town's
failure to act on their request to expand the auto body shop and

34

they seek recovery for the delay, the decision can be deemed
final.

### 3.   Request to Connect to the Hunterbrook Sewer District

The Plaintiffs also argue that the Town's decision in
October 2000 to not allow them to connect to the Hunterbrook
Sewer District was a final decision that "effectively sterilized
the property, rendering it unsuitable for any economic use."
Adrian Affidavit at ¶ 37.  In his affidavit, Adrian asserts that,
in October 2000, he was informed that he would not be permitted
to connect to the sewer district and that the Town issued a "new
map . . . relegating the property to the vague future 'proposed
extensions.'" *Id.* at ¶ 36.  Other than a photocopy of the October
2000 map, there is nothing in the record, to show that the Town
ever made a decision in October 2000 to deny the Plaintiffs'
request to join the sewer district, let alone a final decision
within the meaning of the *Williamson* ripeness test.  Even
assuming Adrian's assertions in his affidavit are true, such
evidence hardly suffices to establish that the Town came to a
final decision to deny their request to connect to the sewer
district.[2]

---

[2]  Moreover, the record shows that the Plaintiffs were
granted a permit to connect to the sewer district in June 2001;
thus, any challenge to the Town's refusal to allow them to join
the district is moot.  *See* Plaintiffs' Ex. 38 (Permit).

**4.  Findings Statement on Stop & Shop Development Project**

The next action taken by the Town of which the Plaintiffs complain is the issuance of the Findings Statement in connection with the site plan approval application for the Stop & Shop project.  The Plaintiffs assert that the conditions imposed by the Town before it would approve the plan "killed the project." Adrian Affidavit at ¶ 4D.  The Town Planning Board's final vote on the application was scheduled for March 18, 2000; however, the lessee of the property, Verticon, withdrew the application prior to the vote.  Thus, the Town never even had an opportunity to make a final decision.  In *R-Goshen LLC v. Village of Goshen*, 289 F.Supp.2d 441 (S.D.N.Y. 2003), the plaintiff brought takings, substantive due process, and equal protection claims against a municipality based on the Town's conditional approval of the plaintiff's building application.  Noting that "a conditional approval cannot be interpreted as a decision that denies Plaintiff the ability to use and derive economic benefit from his property," the Court held that the takings claim was not ripe.[3] *Id.* at 449.  Like the construction project in *R-Goshen LLC*, the Stop & Shop development project was abandoned after the Town

---

[3]  Although the Court found only the takings claim unripe, on appeal, the Second Circuit, in an unpublished opinion, affirmed the Court's decision granting summary judgment on the ground that all of the Plaintiff's § 1983 claims were unripe for the reasons stated by the district court.  *See R-Goshen LLC v. Andrews*, 115 Fed. Appx. 465 (2d Cir. 2004).

announced the conditions that would be imposed.   There is nothing in the record to indicate that the Plaintiffs or Verticon attempted to negotiate the conditions with the Town or pursued the project to a final determination.   Accordingly, the Findings Statement issued by the Town is not a final decision that denied the Plaintiffs "all reasonable beneficial use of [their] property." *Williamson*, 473 U.S. at 194.

     5.    **Failure to Refund $150,000 Mitigation Payment**

Another action taken by the Town against the Plaintiffs that underlies the Plaintiffs' taking, equal protection, and due process claims is the failure of the Town to return the $150,000 mitigation payment they paid in November 1999.   In their complaint, the Plaintiffs allege that the Town's refusal to refund the money violates their right to substantive due process and constitutes an unlawful taking of their property.   *See* Compl. at ¶¶ 129, 149.   In his affidavit, Adrian states that, by letter dated February 25, 2003, he demanded that the Town return the $150,000 and asserts that, "after a reasonable time, [he] is entitled to regard the Town's refusal even to respond to my letter, followed up by several verbal requests, as a final decision." Adrian Affidavit at ¶ 4A.   Based on this record, the Court finds that the Town has not made an affirmative decision to retain the Plaintiffs' $150,000 mitigation payment.   In fact, the Plaintiffs concede as much when they claim that the Town has

simply refused to respond to their demands for a return of the money.  Their assertion that such refusal and the Town's delay in responding to their request should render the Town's decision final is more appropriately construed as an argument that any attempt to obtain a final decision from the Town would be futile. The Plaintiff's futility argument with respect to each of the Town's actions will be discussed below.

### 6.   **Futility Exception to the Final Decision Requirement**

The Plaintiffs argue that, even if the Town's decisions are not deemed final, the Town's delay in acting on their requests and its hostility toward the Plaintiffs rendered any effort to obtain a final decision from the Town futile.  *See* Plaintiffs' Memorandum of Law at 6-7.  The Second Circuit has recognized a futility exception to the final decision requirement.  *See Southview Assocs.*, 980 F.2d at 98-99.  "Under this exception, certain procedures that a plaintiff normally would be required to pursue in order to receive a final determination may be excused if the plaintiff can demonstrate, by more than mere allegations, that they would be futile."  *Honess 52 Corp. v. Town of Fishkill*, 1 F.Supp.2d 294, 301 (S.D.N.Y. 1998).  In applying this narrowly construed exception, courts have considered a defendant's hostility, delay, and obstruction.  *See Goldfine*, 80 F.Supp.2d at 159-60.

In *Goldfine*, the plaintiff alleged that the defendants were

hostile to his development plans and that they conspired to
prevent him from continuing the project.  In considering these
allegations, this Court noted that, "mere allegations of open
hostility [a]re not sufficient to invoke the futility exception."
*Goldfine*, 80 F.Supp.2d at 160.  The Court held that, although the
plaintiff's allegations of hostility were supported by
allegations that the defendant representative from the Department
of Environmental Protection failed to show up for site visits and
misinterpreted relevant environmental regulations in order to
make development of the project more difficult, the allegations
were "insufficient to show that 'the prospect of refusal is
certain' and invoke the narrow futility exception.'"  *Goldfine*,
80 F.Supp.2d at 161.  In another recent land use case, this Court
dismissed the plaintiffs' § 1983 claims, finding that the
plaintiff owners of a proposed "physical culture establishment"
catering primarily to a gay male clientele, who withdrew their
application for a permit because of alleged bias on the part of
the city Board of Standards and Appeals, failed to establish that
it would have been futile to continue with the application
process.  *Dix v. City of New York*, No. 01 Civ. 6186, 2002 WL
31175251, at *8 (S.D.N.Y. Sept. 30, 2002).  In support of their
claim of bias, the plaintiffs pointed to the issuance of a "stop
work order," alleged harassment and intimidation of contractors
at the work site, the defendants' conspiracy to coordinate a

campaign of defamation, and the defendants' interference with the procedures normally applied by the Board of Standards and Appeals.  *See id.*  The Court, however, found these allegations insufficient to support the futility exception.  *See id.*

Here, the only evidence the Plaintiffs have submitted of the Town's alleged hostility towards them is Joseph Adrian's affidavit, in which he attests that "a number of Town officials . . . were simply out to destroy us, and to prevent us from developing anything on our property" and that the former chairman of the Town Planning Board had stated, "Adrian won't get any approvals as long as I'm on this [Planning] Board.  I don't like him."  Adrian Affidavit at ¶¶ 10, 20.  Like the allegations raised in *Goldfine* and *Dix*, these allegations are inadequate to support the application of the futility exception.  The Plaintiffs' unsupported allegation that Town officials were out to destroy them is insufficient to raise a material issue of fact.  Moreover, the alleged statement of the chairman of the Town Planning Board does not establish that any attempt to obtain final decisions from the Town on their applications and requests would be futile because, as the Plaintiffs point out, this statement was made by the *former* chairman of the Planning Board.  The Plaintiffs have offered no evidence to establish that any members of the Planning Board or any other Town officials harbor any sort of ill will toward them that would render their pursuit

40

of final decisions from the Town futile.

The Plaintiffs also argue that the Town's delay in acting on certain applications and requests that they have made demonstrates that further attempts to obtain final decisions would be futile. This Court also considered delay arguments in *Goldfine*. There, the plaintiff argued that the defendants' three-year delay in completing the environmental testing rendered his efforts to obtain approval for the development futile. Noting that, in *Williamson*, the Supreme Court found the takings claim to be unripe despite an eight-year application process, this Court held that a three-year delay was "insufficient to create futility." *Goldfine*, 80 F.Supp.2d at 161. Here, with respect to the Plaintiffs' request for re-approval of the car wash, the record shows that the Plaintiffs submitted their application in September 2001. They filed the instant complaint only two years later. This delay cannot be deemed sufficient to invoke the futility exception. The delay with respect to the Plaintiffs' request to join the sewer district is also not sufficient to support the application of the futility exception. They claim that they requested a connection to the sewer district in 1999, when the Lakeside Pump Station was completed and now challenge the Town's alleged decision in October 2000 to deny them a connection. Given this Court's rejection of a futility claim based on a three-year delay in *Goldfine*, any delay on the

41

part of the Town in acting on the Plaintiff's application for a connection to the sewer district is not lengthy enough to warrant a finding of futility, particularly in the absence of any other facts demonstrating futility.  Finally, the less than seven month delay by the Town in responding to the Plaintiffs' demand for return of their $150,000 mitigation payment before the Plaintiffs' filed the instant complaint is clearly insufficient to invoke the futility exception.

Accordingly, the only decision of the Town of which the Plaintiffs complain that can be deemed final is the Town's failure to act on the Plaintiffs' application to expand the auto body shop.  Because substantive due process claims premised on arbitrary and capricious conduct of the government are not subject to the second prong of the *Williamson* ripeness test, to the extent the Plaintiffs' substantive due process claim is based on this allegation, the claim is ripe for adjudication.

**B.   Denial of State Compensation**

Despite this Court's finding that the Town's failure to act on the Plaintiffs' application to expand the auto body shop is a final decision and even if the other alleged actions of the Town could be deemed final decisions, the Plaintiff's takings, equal protection, and procedural due process claims are unripe due to the Plaintiffs' failure to seek compensation via state court procedures before bringing this lawsuit.  In *Williamson*, the

Supreme Court explained that "the Fifth Amendment [does not] require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." 473 U.S. at 194 (internal citations and quotation marks omitted). Thus, the Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* In *Sudarsky v. City of New York*, this Court explained that "[a] court cannot determine whether [a] state has provided a property owner with 'just compensation' for property which has been taken until the amount of compensation the state intends to provide is known." 779 F.Supp. 287, 301 (S.D.N.Y. 1991)(citing *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 350 (1986)). "New York state law provides compensation for a *de facto* taking upon a showing of legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property." *Goldfine*, 80 F.Supp. 2d at 161 (internal citations and quotation marks omitted).

In the instant case, the Plaintiffs have not availed themselves of the New York state procedures for obtaining

compensation. The Plaintiffs argue that, under § 207(C) of the New York Eminent Domain Procedure Law, in order to maintain a *de facto* condemnation claim, a plaintiff must show that their property was taken for a "public purpose" and, because the Town took their property in retaliation for their exercise First Amendment rights and "to carry out [its] private feud with Mr. Adrian and his family," they, therefore, could not assert a *de facto* condemnation claim in state court. *See id.* at 8.  This is an improper reading of the statute.  Section 207(C) only provides a list of factors that a court must consider when reviewing the state or a municipality's decision to acquire property by eminent domain, which includes, *inter alia*, whether "a public use, benefit or purpose will be served by the proposed acquisition." N.Y. Em. Dom. Proc. Law § 207(C)(4).  There is no requirement that a plaintiff challenging an unlawful taking show that the taking was done to further a public purpose.  The Plaintiffs have, thus, failed to demonstrate that New York State does not provide a remedy for the alleged violations.

The Plaintiffs further argue that, even if New York State does provide an adequate remedy for their takings-type claims by way of an inverse condemnation or *de facto* condemnation claim, it is sufficient that they have raised such claim in this lawsuit as a pendent claim.  This argument is unavailing.  The law is clear that a takings claim cannot be brought in federal court until

44

compensation has been sought and denied in state court.  As this Court stated in *R-Goshen LLC*, "a landowner has not suffered a violation of the Fifth Amendment until he has attempted without success to obtain just compensation through the procedures by the State."  289 F.Supp.2d at 449.  The Plaintiffs, here, have failed to do so, which renders their takings, equal protection, and procedural due process claims premature.  Additionally, because the Plaintiffs failed to pursue a *de facto* condemnation claim in state court, they may not do so as part of this lawsuit. Accordingly, summary judgment is granted to the Town on the Plaintiffs' takings, equal protection, procedural due process, and *de facto* condemnation claims.

IV.        **Substantive Due Process**

       As explained above, to the extent the Plaintiffs' substantive due process claim is premised on an allegation that the Town arbitrarily and capriciously refused to act on their application to expand the auto body shop, the claim is ripe.  In addition to its ripeness argument, the Town argues that, with respect to the Plaintiffs' substantive due process claim based on the Town's alleged failure to act on certain applications and requests, the claim should be dismissed because they have no vested property interest.  The Town asserts that, where a landowner is seeking a permit or approval to use land in a desired way and the agency or board passing on such application

45

is vested with discretion, the landowner has no vested property right if the agency or board has not yet acted.

In evaluating a plaintiff's challenge to the denial of approval for a regulated use of land, "a court first asks whether 'an entitlement exists in what has been applied for . . . instead of simply recognizing the owner's indisputable property interest in the land he owns and asking whether . . . government has exceeded the limits of substantive due process in regulating the plaintiff's use of his property by denying the application arbitrarily and capriciously.'" *Southview Assocs.*, 980 F.2d at 101 (quoting *RRI Realty Corp. v. Incorporated Vill. of Southhampton*, 870 F.2d 911, 917 (2d Cir. 1989)). Whether a plaintiff has a property interest is normally a question of law for the Court. *See R-Goshen LLC*, 289 F.Supp.2d at 450. "A landowner has a legitimate claim of entitlement when, 'absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" *Southview Assocs.*, 980 F.2d at 101. The central factor in this inquiry is the degree of discretion of the regulating body, not the probability that the government would grant the use that the landowner seeks. *See id.* "[T]he requisite 'strong likelihood' of approval exists 'only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually certain.'" *Id.*

46

(quoting *RRI Realty Corp.*, 870 F.2d at 918)).  As this Court has stated, "If the deciding authority has discretion to grant or deny a permit or application and has not yet acted, the applicant has no vested property right to issuance of the permit or a favorable determination on the application."  *R-Goshen LLC*, 289 F.Supp.2d at 450.

Under New York Town Law § 274-a, the Town Board is empowered to authorize the Town Planning Board to "review and approve, approve with modifications or disapprove site plans."  N.Y. Town Law § 274-a.  Although the Town has failed to direct the Court to the relevant provisions of its Town Code granting it discretion in reviewing applications for site plan approval such as the one submitted by the Plaintiffs to expand the auto body shop, a brief review of the Town Code reveals that the Town Planning Board is vested with such discretion.  Section 195-41 of the Town Code sets forth the minimum requirements and design standards for site plans and parking plans and states that such requirements and standards "shall be varied, deferred or waived by the Board only under circumstances set forth in Article VIII, § 195-40."  Yorktown Town Code, Art. VIII, § 195-41.  The provision further states that "[t]he Board is empowered to impose higher planning and design standards than herein set forth where it finds that because of exceptional and unique conditions of topography, location, shape, size, drainage or other physical features of the

47

site, or because of the special nature and character of surrounding development, the minimum standards could not reasonably protect or provide for public health, safety or welfare." *Id.* These provisions indicate that the granting of site plan approval for development is within the Town's discretion. Thus, the Plaintiffs cannot establish that they have a vested property interest to sustain a substantive due process claim based on the Town's refusal to process its application for site plan approval for the auto body shop expansion. *See R-Goshen LLC*, 289 F.Supp.2d at 452; *Orange Lake Assocs., Inc. v. Kirkpatrick*, 825 F.Supp. 1169, 1178 (S.D.N.Y. 1993). Accordingly, summary judgment on the Plaintiffs' substantive due process claim is granted.

**V.**     **False Arrest and Malicious Prosection**

The Town contends that, because the dismissal of the summons issued against the Plaintiffs in February 2000 was not "a termination of the action in favor of the accused," the claims should be dismissed. *See* Town's Reply Memorandum of Law at 11. With respect to the Plaintiffs' false arrest claim, the Court agrees that the claim should be dismissed, but for a different reason than that asserted by the Town. The Court also finds that the Plaintiffs' have failed to establish a claim for malicious prosecution.

To state a claim for false arrest under § 1983, a plaintiff

48

must show that "(1) the defendant intended to confine the
plaintiff, (2) the plaintiff was conscious of the confinement,
(3) the plaintiff did not consent to the confinement, and (4) the
confinement was not otherwise privileged." *Savino v. City of New
York*, 331 F.3d 63, 75 (2d Cir. 2003).  The Plaintiffs claim that
the issuance of the summons by a Town Environmental Code Officer
constituted an arrest.  Courts have held, however, that the
issuance of such a summons does not constitute the type of
intentional confinement that is necessary to sustain a claim for
false arrest.  *See Griffin-Nolan v. Providence Washington Ins.
Co.*, No. 504-CV-1453, 2005 WL 1460424, at *4 (N.D.N.Y. June 20,
2005)(collecting cases and noting that "[e]very New York case of
which the Court is aware that has considered whether the issuance
of an appearance ticket constitutes confinement has held that the
issuance of an appearance ticket, in an of itself, does not
constitute confinement for purposes of a common law false arrest
. . . claim"); *Granato v. City of New York*, No. 98-CV-667, 1999
WL 1129611, at *4 (E.D.N.Y. Oct. 18, 1999)("By itself, certainly,
the issuance of a summons is functionally distinct from an
arrest.").  Because the Plaintiffs cannot establish the first
element of their false arrest claim, summary judgment on this
claim is appropriate.

　　　To prove a § 1983 malicious prosecution claim, a plaintiff
must demonstrate that: (1) the defendant initiated a criminal

proceeding; (2) the proceeding was terminated favorably to the plaintiff; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously. *See Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). The element at issue in this case is the favorable termination element. "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for the[] purposes [of a malicious prosecution claim], only when its final disposition is such as to indicate the innocence of the accused." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997). The nature and circumstances of the termination will determine whether it is indicative of innocence; "the dispositive inquiry is whether the failure to proceed 'impl[ies] a lack of reasonable grounds for the prosecution.'" *Id.* (quoting *Loeb v. Teitelbaum*, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d Dep't 1980)). It is well-settled that dismissals "in the interests of justice" under N.Y. Crim. Proc. Law § 170.40 are generally considered not to be dispositions in favor of the accused. *See id.* at 949; *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

The Town contends that the Plaintiffs cannot make out a malicious prosecution claim because the February 2000 summons was dismissed "in the interests of justice." In support of this claim, the Town has submitted a copy of the file jacket maintained by Douglas Fitzmorris, the Town Prosecutor that

50

handled the matter, which indicates that, on December 21, 2000, the case was dismissed in the interests of justice. *See* Reply Memorandum of Law at Ex. A. It also has submitted a portion of the Town Prosecutor's deposition testimony, in which he testified that the case was dismissed in the interests of justice. *See id*. The Plaintiffs challenge the Town's position that the charges were dismissed in the interests of justice and the evidence submitted to support this assertion. *See* Supplemental Adrian Affidavit. Adrian maintains that the case was dismissed on the merits, as he was insistent on a merits-based dismissal at the time. *See id*. He states,

> I am absolutely certain that the case could not have been dismissed in the interest of justice. I was insistent that the case be withdrawn, on the merits. I told Mr. Fitzmorris at the time, that I intended to sue the Town, and I requested that he retain his file for that reason.

*Id*. at ¶ 7. Adrian further states that he reviewed the entire file for the case and there was nothing in it to indicate that the case was dismissed in the interests of justice. *See id*. The Plaintiffs submitted a copy of the "Case History Listing" for the proceeding, which states that the case was dismissed, but does not indicate the grounds for the dismissal. *See id*. at attached exhibit.

This Court finds that the Plaintiffs have failed to establish an essential element of their malicious prosecution claim. Joseph Adrian's conclusory assertions regarding his

recollection of the Town Court proceedings is insufficient to create a genuine issue of material fact as to the basis of the dismissal of the February 2000 summons. *See BellSouth Telecommunications, Inc.*, 77 F.3d at 615. The Case History Listing submitted by the Plaintiffs also fails to raise a genuine issue of fact as it merely states that the matter was dismissed. Such evidence fails to show a termination indicative of innocence or that the prosecution lacked reasonable grounds to proceed with the charges. Moreover, Adrian's admission in his affidavit that, during the proceedings, he told the Town Prosecutor that he wanted a merits-based dismissal because he intended to sue the Town lends further support to the Town's evidence showing that the matter was dismissed in the interests of justice. Armed with the knowledge of Adrian's intent to sue the Town, the Town would certainly have sought to obtain a dismissal that would not leave them open to any type of liability. Accordingly, the Court grants the Town's motion for summary judgment as to this claim.

## Conclusion

Based on the foregoing, the Town's motion for summary judgment is granted as to the Plaintiffs' equal protection, substantive due process, procedural due process, taking without just compensation, *de facto* condemnation, false arrest, and malicious prosecution claims. The motion is denied as to the Plaintiffs' First Amendment retaliation claim. Finally, because

the Town did not move for summary judgment as to the Plaintiffs'
state law claim for money had and received, the claim remains.

Finally, because there are two claims that remain for trial
which are based on the same set of facts as those that have been
dismissed by this order and the trial is scheduled to commence on
August 21, 2006, the Court finds no just reason to delay an
appeal of the dismissal of the Plaintiffs' claims.  This will
avoid the necessity of a second trial of the same facts in the
event the Second Circuit reverses this Court's grant of summary
judgment as to any of the Plaintiffs' claims.  The Clerk is,
therefore, directed to enter judgment, pursuant to Fed. R. Civ.
Proc. 54(b), in favor of Town on the Plaintiffs' claims of: (1)
equal protection; (2) substantive due process; (3) procedural due
process; (4) taking without just compensation; (5) *de facto*
condemnation; (6) false arrest; and (7) malicious prosecution.

SO ORDERED.

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

White Plains, New York
Date: April **26**, 2006

53

Copies of this order have been sent to the following:

David O. Wright, Esq.
1820 Commerce Street
Yorktown Heights, New York 10598

Ralph Schoene, Esq.
Voute, Lohrfink, Magro & Collins, LLP
170 Hamilton Avenue
White Plains, New York 10601