**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
                              :
JOSEPH M. ADRIAN, ELAINE M.   :
ADRIAN, and ADRIAN FAMILY     :
PARTNERS I, L.P.,             :
                              :
          Plaintiffs,         :
                              :        <u>MEMORANDUM ORDER</u>
     -against-                :        **03 Civ. 6604 (MDF)**
                              :
TOWN OF YORKTOWN,             :
                              :
          Defendants.         :
                              :
------------------------------X

**Mark D. Fox, United States Magistrate Judge.**

In September 2003, Joseph and Elaine Adrian and Adrian
Family Partners I, L.P. (the "Plaintiffs") commenced this action,
pursuant to 42 U.S.C. § 1983 and New York State law, against the
Town of Yorktown (the "Town"), alleging that the Town, through
its Town Supervisor, Linda Cooper, and other policy-making
officials, maintained an official policy to deny the Plaintiffs
the right to develop their property and to punish and retaliate
against the Plaintiffs for exercising their First Amendment
rights.  The parties consented to proceed before the undersigned
United States Magistrate Judge for all purposes pursuant to 28
U.S.C. § 636(c).  Currently before the Court are Plaintiff's
motions to modify the judgment, pursuant to Rule 60(b) of the
Federal Rules of Civil Procedure and Local Rule 6.3, and to amend
the complaint.  For the reasons, that follow, Plaintiffs' motion

1

to amend the complaint is granted for the purpose of resolving the motion to modify the judgment and the motion to modify the judgment is granted in part and denied in part.

I.      **Procedural History**

On April 26, 2006, this Court entered a decision and order granting summary judgment to the Town on all of Plaintiff's claims except for the First Amendment retaliation claim and the pendent state law claim for money had and received.  A partial judgment was entered pursuant to Fed. R. Civ. P. 54(b) on May 1, 2006.  Before filing a notice of appeal, Plaintiffs moved, pursuant to Rule 60(b), for an order "correcting certain mistakes in the Decision and Order dated April 26, 2006, or in the alternative reconsidering and rearguing same . . . ."  Notice of Motion dated May 3, 2006.  On reconsideration, the Court clarified its previous order and modified it to reinstate Plaintiffs' malicious prosecution claim.  Plaintiff appealed the partial judgment to the Second Circuit and the trial was stayed pending the outcome of the appeal.

In a summary order dated December 28, 2006, the Second Circuit dismissed Plaintiffs' appeal for lack of appellate jurisdiction.  In a footnote, the Court made the following observations to aid this Court in its further consideration of the ripeness issues presented in this case: (1) the Court applied the second prong of the ripeness test set forth in *Williamson*

2

*County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), to Plaintiff's equal protection and procedural due process claims, despite the fact that the circuit court has not yet held whether this is appropriate; (2) the Court applied the first prong of the *Williamson County* ripeness test to the Plaintiffs' equal protection and procedural due process claims without first determining whether constitutional injury had already been inflicted; and (3) at oral argument before the circuit court, counsel for the Town suggested that the Town had no intention of returning the $150,000 the Plaintiffs contend has been wrongly withheld from them.  With respect to the third observation, the Court stated that this Court should consider how counsel's representation affects the ripeness of Plaintiffs' claims.

After the Court of Appeals entered its decision, this Court held a conference with the parties and advised them that it would accept any Rule 60 motion for reconsideration limited to the issues raised by the circuit court in its December 28, 2006 summary order.

II.     **Plaintiffs' Motions**

In their motion for reconsideration, the Plaintiffs argue that: (1) their equal protection and due process claims are not subject to the *Williamson County* ripeness test because they suffered immediate injury independent of the takings claim; (2)

3

the takings claim was not subject to the *Williamson County* ripeness test because the property was taken for private purpose, not public use; (3) the Court incorrectly applied prong two of the *Williamson County* ripeness test to Plaintiffs' due process and equal protection claims; and (4) the Town's refusal to return the $150,000 mitigation payment is a final decision.  *See* Adrian Aff. at 5-15.

In addition to their Rule 60 motion, the Plaintiffs seek leave to file an amended complaint.  Noting that, at oral argument before the circuit court, the panel "criticized the [complaint] as 'hodgepodge,'" the Plaintiffs submit a proposed amended complaint in an attempt "to separate the claims and the facts that support each of the claims."  *Id.* at 2, n.3.  As part of this effort, the Plaintiffs have added to the first and second claims for relief (the equal protection and procedural due process claims) a list of fifteen specific alleged actions of the Town.  The list includes: (1) the Town's refusal to process Plaintiff's application for approval of a car wash; (2) the Town's refusal to allow Plaintiffs to join the Hunterbrook sewer district; (3) the Town's refusal to process the Stop & Shop application unless Plaintiffs paid $150,000; (4) the Town's refusal to return the $150,000 mitigation payment; (5) the Town's refusal to take any action to enforce codes against surrounding property owners who were dumping stormwater on Plaintiffs'

property; (6) the Town's refusal to issue a new wetlands map after being ordered to do so by a justice of the New York Supreme Court; (7) the Town's rezoning of most of Plaintiffs' property; (8) the Town's refusal to enforce codes against James Criniti; (9) the Town's refusal to allow additions to the auto body shop; (10) selective prosecution of the Adrians; (11) issuance of the Stop & Shop Findings Statement, which imposed obligations on Plaintiffs not imposed on other similarly situated property owners; (12) the filing of a motion to dismiss in Plaintiffs' 2002 Article 78 action against the Town Zoning Board of Appeals, the estate of James Criniti, DMB Realty, and John Bauso, when no such motion had been filed in another similar case; (13) the Town's refusal to process Plaintiffs' wetland permit applications; (14) the Town's refusal to enforce codes against other similarly situated property owners; and (15) the Town's refusal to provide responses to Plaintiffs' FOIL requests routinely given to other residents. *See* Amended Compl. at 32-34. Plaintiffs allege that each of these actions was a final decision that renders their constitutional claims ripe for adjudication.

## III.   <u>**Analysis**</u>

Rule 60(b) of the Federal Rules of Civil Procedure permits a party to seek relief from a final judgment, order, or proceeding on numerous grounds, including, *inter alia*, mistake, inadvertence, surprise, excusable neglect, and newly discovered

evidence.  *See* Fed. R. Civ. P. 60(b).  Rule 60(b) further
provides that the court may relieve a party from a judgment or
order for "any other reason justifying relief from the operation
of the judgment."  Fed. R. Civ. P. 60(b)(6).  Such a motion is
addressed to the sound discretion of the trial court and may only
be granted on a showing of exceptional circumstances.  *See*
*Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731
(2d Cir. 1990).

In light of the comments made by the circuit court in its
summary order, I find that reconsideration of the Court's April
2006 decision and order, limited to those issues raised by the
Court of Appeals, is appropriate.

A.   **Whether Plaintiffs' Procedural Due Process and Equal
     Protection Claims are Subject to the *Williamson County*
     Ripeness Test**

In land use cases, the Supreme Court has developed a two-
pronged inquiry for determining whether a claim is ripe.  *See*
*Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson*
*City*, 473 U.S. 172 (1985).  A court must determine, first,
whether the government entity has made a "final decision" on the
matter, and second, whether the plaintiff has exhausted state
procedures for obtaining just compensation.  *See id*. at 186, 194.
In *Williamson*, the two-pronged ripeness test was applied to a
takings claim; however, under certain circumstances, the same
analysis applies to due process and equal protection claims that

6

arise "in the context of land use challenges." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

In its summary order in the instant case, the circuit court, citing its decision in *Dougherty*, suggested that, if Plaintiffs suffered immediate injury as a result of the Town's actions, then their equal protection and due process claims would not be subject to the *Williamson County* ripeness analysis.  In *Dougherty*, the plaintiff alleged that the defendant Board of Zoning Appeals violated his constitutional rights to, *inter alia*, procedural due process and equal protection by denying his application for a building permit to allow construction on his cooperative bungalow unit.  *See id*. at 87.  The plaintiff also asserted a First Amendment retaliation claim against the defendant.  *See id*.  Applying the first prong of the *Williamson County* test to Plaintiff's equal protection[1] and procedural due process claims, the Court held that the plaintiff had not received a final decision on his permit application because he never applied for a variance from the Board after the Board's denial; therefore, the claims were not ripe.  *See id*. at 88-89.

-----

[1]  The Second Circuit's opinion did not explain the precise nature of Dougherty's equal protection claim; however, review of the parties' briefs on appeal reveal that, like Plaintiffs in this case, he alleged an equal protection selective enforcement claim.  *See* Brief of Plaintiff-Appellant Michael C. Dougherty at 19 and Brief for Defendants-Appellees at 27, *Dougherty*, 282 F.3d 83 (2d Cir. 2002)(No. 01-7223).

The Court noted the plaintiff's complaint that he had suffered a five and a half year delay as a result of the defendant's requirement that he file an Environmental Impact Statement along with his permit application, that the Board had treated him unfairly in changing its policy regarding prior nonconforming uses and requiring him to remove the addition he had constructed and an addition constructed by a prior owner, and that he had lost use of his property over a lengthy period and the rental income he could have earned; however, the Court held that *Williamson County* still applied and rendered his claims unripe. *See id*. at 89.

With respect to the plaintiff's First Amendment retaliation claim, the Court in *Dougherty* held that the *Williamson County* ripeness inquiry did not apply to this claim, noting that the claim was "significantly different from his due process and equal protection claims." *Id*. at 90.  The Court explained that "[t]he latter claims each raise a question of administrative finality, but Dougherty's First Amendment claim of retaliation is based upon an immediate injury." *Id*.  The Court concluded that the plaintiff had suffered a constitutional injury under the First Amendment the moment that his permit was revoked and that seeking a final administrative decision "would do nothing to further define his injury." *Id*.  According to the circuit court in the instant case, in cases involving land use challenges, a

8

determination as to whether a plaintiff suffered immediate injury may also be appropriate before applying the ripeness analysis to equal protection and procedural due process claims.

Other circuit courts have taken this approach when analyzing the ripeness of equal protection and procedural due process claims in land use cases.  In *Harris v. Cty. of Riverside*, the Ninth Circuit did not apply the *Williamson County* ripeness analysis to Plaintiff's procedural due process claim in his lawsuit challenging the rezoning of his property and the imposition of "bureaucratic roadblocks to his ability to comply with County land use procedures."  904 F.2d 497, 498 (9th Cir. 1990).  The Court held with respect to the plaintiff's procedural due process claim that a detetermination as to whether the County had made a final decision of the development permitted on the plaintiff's land was not necessary because the claim "focuse[d] on the required payment of a substantial, nonrefundable fee to apply to regain the commercial use of his land, as well as the deprivation of that use."  *Id*. at 501.  The Court reasoned that, "[i]n contrast to [the plaintiff]'s taking claim . . . his procedural due process claim challenges the rezoning decision in isolation, as a single decision with its own consequences, rather than as one in a series of County actions resulting in a taking."  *Id*.  In *Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara*, 344 F.3d 822 (9th Cir. 2003), the Ninth Circuit again declined to

9

apply the *Williamson County* test to a plaintiff's equal
protection and procedural due process claims.  The Court held
that, because the plaintiff's challenge was to the procedure he
had to endure to obtain required permits, his claims were not "as
applied" takings claims.  *See id*. at 830.  They Court explained
that "[e]ven if the County relented . . . and issued all of the
permits [plaintiff] has applied for, he would still have been
injured by the treatment he allegedly received and which caused
him harm," specifically, retaliation for exercising his First
Amendment rights and restricting him from playing polo on the
property for nine years while waiting for a conditional use
permit.  *Id*. at 830.

      The Sixth Circuit, in *Nasierowski Bros. Investment Co. v.
City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), held that
*Williamson County* did not apply to the plaintiff's procedural due
process claim.  The plaintiff in that case brought an action
claiming that the City Council, acting in executive session,
violated his right to procedural due process by adopting a zoning
ordinance that hindered his plans for development of property
located within the reclassified zone without affording him notice
and an opportunity to be heard.  *See id*. at 893.  The Court held
that the trial court erred in finding that the claim was not ripe
under *Williamson County* because the plaintiff did not allege an
unconstitutional taking of his property under the Fifth and

Fourteenth Amendments.  The Court distinguished between the plaintiff's claim and a takings claim, explaining that "[c]onceptually, in the case of a procedural due process claim, the allegedly infirm process is an injury in itself . . . whereas, in the context of a takings claim, the alleged injury – a diminution in property value – cannot be assessed with any degree of certainty until the municipality arrives at a final decision as to how the property owner will be permitted to develop his property." *Id.* at 894 (internal quotation marks and citation omitted).  The Court found that the plaintiff's injury "accrued and attached immediately" when the City Council met in executive session and voted to amend the proposed zoning ordinance. *Id.*  Thus, despite the absence of a final decision from the City concerning the appropriate development of the property, the Court held that the plaintiff's procedural due process claim was ripe for federal adjudication. *See id.* at 894-95.

Not long after its decision in *Nasierowski*, the Sixth Circuit issued a decision in *Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154, 158-60 (6th Cir. 1992), in which it held that the plaintiffs' equal protection and procedural due process claims were not ripe under *Williamson County*.  In *Bigelow*, the Plaintiffs, a group of individuals who held commercial fishing licenses, brought, along with a takings claim, equal protection

and procedural due process claims challenging the state's support of a plan by which Native Americans were given exclusive fishing rights to fish in certain state waters.  *See id*. at 155.  The Court noted its holding in *Nasierowski* and distinguished it from *Bigelow* by explaining that *Bigelow* "does not present a pure claim of procedural due process, but instead involves several constitutional claims."  *Id*. at 159.  Noting its reliance in *Nasierowski* on the Ninth Circuit's decision in *Harris*, the Court reiterated the Ninth Circuit's observation that, depending on the circumstances of the case, procedural due process claims may be subject to the same *Williamson County* ripeness requirements as a takings claim.  *See id*.  In light of this, the Court stated that, "notwithstanding its broad language, *Nasierowski* appears to stand merely for the sensible proposition that while different circumstances may produce different results, the final decision rule does not apply when the denial of due process itself creates an injury."  *Id*. at 160.  The Court concluded that, unlike the procedural due process claim presented in *Nasierowski*, "[t]he plaintiffs' procedural due process is ancillary to th[e] main issue" – "whether the state properly denied full compensation to the plaintiffs for their fishing licenses."  *Id*.  Accordingly, the Court found that "[t]here was . . . no instantaneous infliction of concrete injury," and, therefore, applied the *Williamson County* ripeness analysis to the claim.  *Id*. (internal

quotation marks omitted).

The Seventh Circuit's decision in *Patel v. City of Chicago*, 383 F.3d 569 (7th Cir. 2004), offers another example of *Williamson County*'s application to constitutional claims other than takings claims.  In that case, owners of several motels in the City brought a suit against the City alleging that the passage of an ordinance designating the area surrounding the motels as a redevelopment zone and identifying the motels as potential targets for acquisition through eminent domain was arbitrary and violated their rights under the equal protection clause of the Fourteenth Amendment.  *See id*. at 570.  The Court concluded that the plaintiffs had not alleged a *bona fide* equal protection claim, but rather, had "merely re-labeled their takings claim as an equal protection claim, presumably to avoid *Williamson County*'s ripeness requirement."  *Id*. at 573.  The Court held that "the [p]laintiffs' characterization of both the injury they have allegedly suffered and the relief they seek places their claim squarely within the rubric of a takings claim and the coverage of *Williamson County*."  *Id*.

Similarly, here, the injury alleged by the Plaintiffs – the loss of the development value of their property – places their equal protection and procedural due process claims within the takings realm.  The key issue presented by Plaintiffs' complaint is whether the fifteen alleged actions of the Town led to the

13

loss of Plaintiffs' ability to develop their property without just compensation.  Plaintiffs' complaint and the way in which they have framed the allegations therein illustrate that their equal protection and procedural due process claims are "ancillary to this main issue," *Bigelow*, 970 F.2d at 160, and, therefore, subject to, at the very least, the finality requirement set forth in *Williamson County*, *see Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F.Supp.2d 142, 149 (E.D.N.Y. 2006)(holding that "[i]nasmuch as plaintiff's takings, due process and equal protection claims . . . arise out of the same factual events, namely defendants' alleged actions in failing to act on plaintiff's site application, including defendants' alleged failure to notify plaintiff of Section 85-79 of the Town Code and defendants' alleged selective enforcement of this Section, the Court will apply the same ripeness inquiry to plaintiff's takings, due process, and equal protection claims"); *Goldfine v. Kelly*, 80 F.Supp.2d 153, 159 (S.D.N.Y. 2000)(holding that, because plaintiff's unconstitutional taking, due process, and equal protection claims "arise out of the same nucleus of facts," the ripeness inquiry is the same for all of these claims).

In the first section of the complaint, labeled, "Nature of this Action," Plaintiffs allege that they have been "subjected to a pattern of arbitrary and illegal regulatory decisions, criminal

prosecution and selective interpretation and enforcement of the law, to the point where they have lost a multi-million dollar parcel of prime commercial real estate." Compl. at ¶ 1. They further claim that, throughout the course of Plaintiffs' attempts to develop their property, "the Town erected arbitrary and illegal obstacles, which plaintiffs later learned were part of a plan by the Town to take the property for 'open space,' without compensation, and to deny plaintiffs any development of the property." *Id*. at ¶ 7. The amount of damages sought by Plaintiffs also demonstrates that the injury for which they seek redress is the loss of their property. In the section of their complaint in which they describe their sale of the property, the Plaintiffs allege that "the Town's arbitrary, unreasonable and outright illegal interpretations of law, regulatory impositions and otherwise, had drained the Adrians' resources, since they could not obtain financing, deprived them of income they would otherwise have received, and basically constituted a de facto taking of their property without any [j]ust [c]ompensation." *Id*. at ¶ 118. The Plaintiffs claim that these alleged acts of the Town "deprived them of the development potential of at least $15 million." *Id*. at ¶ 119. Plaintiffs, in turn, seek compensatory damages in the amount of $15 million, precisely the amount of money they claim they could have made had they been able to develop the property. *See id*. at 37.

15

Absent from the complaint and the proposed amended complaint are allegations concerning injuries that occurred separate and apart from the loss of Plaintiffs' property.  With respect to Plaintiff's procedural due process claim, in their complaint and in the proposed amended complaint, Plaintiffs allege that they "were deprived of notice and hearing in regard to defendant's decision to confiscate [P]laintiffs' property without Just Compensation."  Compl. at ¶ 139; Proposed Amended Compl. at ¶ 139.  This statement makes clear that Plaintiffs' procedural due process claim is merely another avenue by which Plaintiffs seek redress for the alleged unconstitutional taking.  Moreover, nowhere in their complaint or motion papers do Plaintiffs describe what process they were allegedly denied or any *immediate* injury they suffered as a result of such deprivation.  The same reasoning holds true for Plaintiffs' equal protection claim. Plaintiffs allege that the Town selectively enforced various laws against them in an effort to prevent them from developing their property.  With the exception of Plaintiffs' allegations concerning the Town's decision to prosecute them for violations of the Freshwater Wetlands Law, which are discussed below, *see supra* p. 24-25, the claim relies on the same allegations that support Plaintiffs' takings claim and, thus, the *Williamson County* ripeness test applies.

Finally, in further support of their position that their

16

claims are not subject to the *Williamson County* ripeness test, the Plaintiffs argue that they are not subject to this analysis because the property was taken for private use.  *See* Plaintiffs' Memorandum of Law at 10.  Plaintiffs' assertion of this argument at this juncture is unavailing.  In the case relied on by Plaintiffs, *Warren v. City of Athens*, the Court stated, "Private use takings do not involve claims for compensation, as they 'are unconstitutional regardless of whether just compensation is paid.'"  411 F.3d 697 (6th Cir. 2002)(quoting *Montgomery v. Carter Cty.*, 226 F.3d 758, 766 (6th Cir. 2000)).  In this case, Plaintiffs expressly claim that their property was taken without just compensation and they seek compensation in the form of damages.  Moreover, nowhere in their complaint do they allege that the Town took their property for the benefit of a private individual.  Accordingly, Plaintiffs' unsupported claim that the taking was for private use does not render their claims ripe for review.

      **B.**   **Final Decision**

In the instant motion and in their proposed amended complaint, Plaintiffs assert that there are fifteen specific actions of the Town that support their equal protection and procedural due process claims.  It is difficult, however, to see how all of these fifteen actions can serve as a basis for or are relevant to such claims.  In reconsidering the application of the

finality prong of the *Williamson County* ripeness analysis to Plaintiffs' claims, these fifteen allegations will be addressed and their relevance to Plaintiff's constitutional claims will be considered.   The parties are referred to the Court's April 2006 decision and order for a discussion of the finality of the Town's decision with respect to Plaintiff's allegations concerning their application for re-approval of the car wash plan, the application to expand the auto body shop, Plaintiffs' request to connect to the Hunterbrook sewer district, and the Town's alleged refusal to process the Stop & Shop application and issuance of the Findings Statement for the Stop & Shop development.

### 1.   Wetlands Designation and Permit Applications

In their complaint, the Plaintiffs allege that the Town violated their constitutional rights by (1) refusing to issue a new wetlands map in accordance with the August 1990 decision of the state court in an Article 78 proceeding brought by the Adrians challenging the Town's denial of their application for a non-wetlands determination and (2) denying their applications for a wetlands permit.  *See* Compl. at ¶¶ 14, 38.  To the extent Plaintiffs' equal protection and procedural due process claims are based on these alleged acts, the relevant inquiry in terms of the ripeness analysis is whether the Town reached a final decision as to the extent of development that would be allowed on that portion of the property designated as wetlands.

18

In its decision on Plaintiffs' Article 78 petition, the state court held that the Town's decision on the Adrians' application for a non-wetlands designation was arbitrary and capricious and lacked a rational basis and remitted the matter to the Town Board for further consideration and, specifically, to determine the finite boundaries of the subject property.  *See* Plaintiff's Ex. 16 (8/30/90 Decision and Order).  According to the evidence submitted by Plaintiffs, after the matter was remitted to the Town Board, an attorney for the Adrians sent a letter and a copy of the state court's decision to the Town Attorney, requesting that the Town make a determination that 6.57 acres of the 7-acre parcel at issue be declared a non-wetlands.  *See* Plaintiffs' Ex. 16.  There is nothing in the record to indicate whether the Town took any action with respect to this request.

To the extent the Plaintiffs argue that the Town's failure to issue a new wetlands map resulted in a taking of their property and a violation of their procedural due process and equal protection rights, this alleged act does not constitute a final decision for the purposes of the ripeness analysis because it does not determine with any degree of certainty that Plaintiffs are unable to develop the land.  In order for a decision to be deemed final, the decision must deny Plaintiffs "all reasonable beneficial use of [their] property." *Williamson*

19

*County*, 473 U.S. at 194.  Designation of a portion of Plaintiff's property, even if improperly designated as such, does not deprive Plaintiffs of their right to develop the property.  In fact, in its decision denying Plaintiffs' application for a non-wetlands determination, the Town stated, "[T]o deny an application for a non-wetlands determination does not mean the property is undevelopable; it only means that any infringement upon the lot's wetlands and/or wetlands functions will be carefully controlled under the wetland permit approval process."  Plaintiff's Ex. 16 at Resolution dated 2/7/89.  Because Plaintiffs' claims rest on the alleged denial of their right to develop the property and they do not set forth any immediate injury they suffered as a result of the Town's failure to issue a new wetlands map, this alleged failure is not a final decision that renders their equal protection and procedural due process claims ripe for review.

In November 1991, after the court's decision on the Article 78 petition, the Adrians submitted an application to the Town for a wetlands permit to enable them to develop the proposed automall.  *See id*. at 11/19/91 Application.  On March 17, 1992, the Town denied the Adrians' application "until such time as they set forth a development plan which allows the analysis required under the Town wetland laws."  *Id*.  In its decision, the Town noted that the Adrians had not selected a development plan for the automall and, at a meeting with the Town Supervisor, had

indicated that they did not intend to advance any particular plan at that time. *See id*. The Town explained that the conceptual plan the Adrians had set forth did not comport with the zoning and would require a use variance, which they had not yet obtained. *See id*. The Town stated, "Permits are issued for a relatively short period of time to complete specific work, not for the mere right to eliminate a wetland to accommodate development that may or may not occur in the future." *Id*. According to the evidence in the record, the Adrians did not submit another application for a wetlands permit until April 1998. *See id*. In a July 15, 1998 memorandum to the Town Engineering Department, the Town Planning Department requested that the Adrians' permit application be referred to it for review in conjunction with the Yorktown Retail Center project that had been proposed for the site.[2] *See id*. According to Plaintiffs, however, the Town ignored this application. *See* Affidavit in Support of Motion for Summary Judgment, Ex. C (Plaintiffs' Response to Defendant's Interrogatories). The March 2000 Findings Statement issued in connection with this proposed development indicated that it "pertain[ed] to the proposed Yorktown Retail Center Site Plan and the Wetlands Permit applications." *See* Plaintiffs' Ex. 5 (Findings Statement).

---

[2] The Yorktown Retail Center project of which the Town referred was the proposed Stop & Shop development.

Indeed, a significant portion of the Findings Statement is
devoted to wetlands mitigation.  *See id*.

Thus, it appears as though Plaintiffs' application was not
ignored, as they now claim, and was, instead, considered in
connection with the proposed Stop and Shop development.  Because
the application for site plan approval of the development was
withdrawn before the Town Planning Board's final vote, *see* Adrian
Affidavit at 4, Defendant's Rule 56.1 Statement at ¶ 11,
Affidavit in Support of Motion for Summary Judgment at Ex. C
(Plaintiffs' Response to Defendant's Interrogatories) at 10-11,
the Town never had an opportunity to make a decision on the
wetlands permit application.  Accordingly, for the purposes of
the ripeness analysis, there was never a final decision
concerning the extent to which the Adrians could develop the
wetlands portion of their property.

### 2.   <u>Town's Rezoning of Plaintiffs' Property</u>

In their complaint, the Plaintiffs make very few allegations
concerning changes to the zoning of their property.  They allege
that, in 1988, "the Town re-mapped the zoning to 'Interchange'
and in 1989 to 'M-1b, Industrial' and 'M-2a, Industrial', all
which would have prevented any commercial development of Adrians'
properties."  Compl. at ¶ 9.  They indicate, however, that, in
May 1989, the Adrians filed an Article 78 proceeding claiming the
rezoning to be unlawful and, thereafter, the Town's effort to

rezone the property was rescinded.  *See id*.  The Plaintiffs also assert in their complaint that they brought another Article 78 proceeding in May 1989 concerning the zoning of their property. *See id*. at ¶ 24-28.  This action concerned the Town's failure to rezone a portion of Plaintiffs' property from "One Family" to "C-3, Highway Commercial."  *See id*.  According to the complaint, the Plaintiffs were successful in this action and, in June 1993, the Town Board rezoned that portion of the property to "C-3, Highway Commercial."  *See id*.  Thus, it appears that the Town never rezoned any portion of Plaintiffs' property, other than in accordance with their wishes.  In fact, in his affidavit submitted in response to the Town's summary judgment motion, Adrian refers to these alleged acts as "attempted rezonings." Adrian Affidavit at ¶ 27.  Based on these allegations and in the absence of any proof in the record to show that the Town rezoned Plaintiffs' property, the Court cannot conclude that there was ever a final decision concerning the alleged rezoning on which Plaintiffs base their constitutional claims.

### 3.  Plaintiffs' Allegations Concerning Actions Taken Against Other Property Owners

Included in Plaintiffs' list of fifteen alleged acts on the part of the Town are several allegations concerning the Town's failure to enforce various laws and regulations against other property owners within the Town.  *See* Amended Compl. at 134 (numbers 5, 8, 10, 12, and 14).  While these allegations may

serve to establish that the Town selectively enforced certain laws against the Plaintiffs that thwarted their ability to develop the property, they are not the actions from which this Court must determine whether the equal protection claim is ripe. Rather, the ripeness analysis requires the Court to examine whether a final decision was ever made with respect to Plaintiffs' property.  If this Court were to exercise jurisdiction over Plaintiffs' equal protection claim, the allegations concerning the Town's failure to enforce laws against other property owners would be considered in connection with this claim.

To the extent the Plaintiffs seek to pursue a selective prosecution claim based on the Town's issuance of a summons in February 2000 for violations of the Freshwater Wetlands Law, *see* Amended Compl. at ¶ 134 (number 10), this claim is separate and distinct from Plaintiffs' takings-type equal protection claim because the injury complained of is the prosecution, not the taking.  It is, therefore, not subject to the ripeness analysis. Accordingly, Plaintiff's equal protection claim based on selective prosecution under the Freshwater Wetlands Law may go forward.[3]  Plaintiff's equal protection claim based on the denial

---

[3]   The Court notes that, in their original motion, other than asserting that the claim should be dismissed on statute of limitations and ripeness grounds, the Town made no arguments with respect to Plaintiffs' equal protection claims.  Thus, since Plaintiff has not had an opportunity to respond to direct

of their right to develop the land is not ripe for the reasons discussed herein and in the Court's April 2006 order.

### 4.   **Town's Denial of Plaintiffs' FOIL Requests**

Plaintiffs claim that the Town, through its supervisor, Linda Cooper, improperly denied all of their requests for information under the Freedom of Information Law ("FOIL"). *See* Compl. 124-27.  They assert that "Cooper's actions in violating the Freedom of Information Law are actuated by a desire to protect herself from possible legal action by plaintiffs, i.e. to prevent the filing of this action, and in retaliation to punish plaintiffs." *Id*. at ¶ 127.  It is not entirely clear from Plaintiffs' complaint how this allegation relates to their constitutional claims.  Plaintiffs may intend to prove this allegation in order to establish the retaliatory animus showing for their First Amendment retaliation claim.  The Court, however, does not see how the alleged denial of FOIL requests can serve as a basis for Plaintiffs' takings-type equal protection and due process claims because it is not the sort of action that would directly affect the development potential of their property. Moreover, to the extent that they are asserting a due process violation based on the denial of their requests, such a claim must fail.

---

challenges to the merits of this claim, this Court is not in a position to consider the merits of this claim.

When the denial of liberty or property is the result of an unauthorized and random act of a state employee, the requirements of due process are not violated so long as the state provides an adequate post-deprivation remedy for such denial.  *See Hellenic Amer. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996).  The denial of a FOIL request constitutes a random, unauthorized act.  *See Brady v. Dammer*, No. 04 Civ. 1126, 2005 WL 1871183, at *8 (N.D.N.Y. Aug. 3, 2005).  The Second Circuit has held that an Article 78 proceeding under New York law is a adequate post-deprivation remedy for such acts of a state employee.  *See Interboro Inst., Inc. v. Foley*, 985 F.2d 90, 93 (2d Cir.1993).  There is nothing in record to indicate that the Plaintiffs ever brought an Article 78 proceeding challenging any denial of their FOIL requests.  Accordingly, they cannot pursue a due process claim under § 1983 based on this alleged act.

### 5.  The Town's Failure to Return Plaintiff's $150,000 Mitigation Deposit

Although in the April 2006 decision this allegation was analyzed in terms of ripeness, upon reconsideration, the Court finds that this allegation is not an appropriate basis for Plaintiffs' takings-type equal protection and due process claims.  To the extent any of Plaintiffs' constitutional claims are based on this alleged injury, the claims are not takings-type claims that are subject to the *Williamson County* ripeness analysis.  The

Town's failure to return the Plaintiffs' mitigation payment does not, however, form the basis of a constitutional action; although, the Plaintiffs may wish to present the facts surrounding this allegation to prove its First Amendment claim. Finally, the Plaintiffs will be permitted to seek recovery for this alleged impropriety through the money had and received claim that is already before the Court.

    **C.**    <u>Whether the Second Prong of the Williamson County Ripeness Test Applies to Plaintiffs' Procedural Due Process and Equal Protection Claims</u>

As set forth in the April 2006 decision, the only claims that survive the first prong of the *Williamson County* ripeness test are the takings, equal protection, and procedural due process claims based on the Town's alleged failure to act on Plaintiffs' application to expand the auto body shop.  In its summary order on appeal from this Court's April 2006 decision, the Second Circuit suggested that application of the second prong of the *Williamson County* ripeness test to equal protection and procedural due process claims may be improper.  Plaintiffs now argue that, even if these claims are subject to the *Williamson County* ripeness analysis, the second prong does not apply.

The Second Circuit has not yet decided under what circumstances, if any, the second prong of *Williamson County* applies to equal protection and procedural due process claims.  District courts within this circuit, however, have

applied the prong two ripeness test to such claims.  *See County View Estates @ Ridge LLC*, 452 F.Supp.2d at 156; *Goldfine v. Kelly*, 80 F.Supp.2d 153, 161 (S.D.N.Y. 2000); *Rivervale Realty Co., Inc. v. Town of Orangetown, New York*, 816 F.Supp. 937, 943 (S.D.N.Y. 1993).  *But see Gavlak v. Somers*, 267 F.Supp.2d 214, 221-22 (D.Conn. 2003)(applying only prong one finality requirement to plaintiffs' procedural due process and equal protection claims).  In support of their position, Plaintiffs cite decisions from other circuit courts that do not apply prong two of the ripeness test to procedural due process and equal protection claims.  In *Taylor Investment, Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1294-95 (3rd Cir. 1993), and *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507 (9th Cir. 1990), both of which were cited by the Second Circuit in its summary order, the courts applied only the final decision prong of the *Williamson County* test in deciding whether the equal protection and due process claims were ripe.  In *Taylor Investment*, the court held that these claims were not ripe because the local zoning authority did not reach a final decision with respect to the revocation of the plaintiff's use permit and did not consider the just compensation prong.  *See* 983 F.2d at 1294-95.  In *Del Monte Dunes*, the Court held that, because the plaintiffs established that reapplication to develop the property would have been futile, their due process and equal protection

claims were ripe.  *See* 920 F.2d at 1507.  Neither decision provides any reasoning for why the second prong of the *Williamson County* test did not apply to the claims.

In *Eide v. Sarasota Cty.*, 908 F.2d 716, 724, n.12 (11th Cir. 1990), another case cited by Plaintiffs, the Court held that, because the plaintiff's equal protection claim relied upon the same rationale as his arbitrary and capricious substantive due process claim, the claim was not subject to the just compensation requirement of the *Williamson County* ripeness test.  However, unlike the Plaintiffs, here, the plaintiff in *Eide* did not assert a claim that he was due just compensation for the taking of his property.  *See id*. at 723.

Plaintiffs also cite to the Seventh Circuit's decision in *Unity Ventures v. Cty. of Lake*, 841 F.2d 770 (7th Cir. 1988).  In that case, the Court held that the plaintiffs equal protection and substantive and procedural due process claims were not ripe for adjudication because they did not obtain a final decision on their application for a sewer connection.  *See id*. at 776.  The Court did not consider the just compensation prong because, like the plaintiff in *Eide*, the plaintiffs in *Unity Ventures* did not allege that their property was taken without just compensation.  *See id*. at 774.

In *Patel*, the Seventh Circuit again considered the ripeness of constitutional claims in land use cases.  383 F.3d at 572-74.

The plaintiffs in *Patel* brought an equal protection claim based on the city's placement of their property on a list of potential targets for acquisition. *See id*. at 570.  The Court held that the claim was subject to both prongs of the *Williamson County* analysis. *See id*. at 573-74.  Citing its decision in *Hager v. City of West Peoria*, 84 F.3d 865, 870 (7th Cir. 1196), the Court stated, "We have explained that '[i]f plaintiffs' only real claim [i]s that [the governmental entity] has rendered their businesses worthless, then pursuant to the rule of *Williamson County* they must go to state court . . . because their claim was truly (and solely) one for a taking.'" *Patel*, 383 F.3d at 573 (alterations in original).

In this case, Plaintiffs' procedural due process and equal protection claims are more akin to the plaintiffs' claim in *Patel*.  As explained above, with the exception of their allegation of selective prosecution under the Freshwater Wetlands Law, Plaintiffs' procedural due process and equal protection claims are based on alleged acts that they claim resulted in the loss of their ability to develop their property.  Thus, the remedy sought by Plaintiffs – just compensation – should have been sought in state court through an inverse condemnation or *de facto* condemnation proceeding.  *See* Decision and Order dated Aril 26, 2006 at 42-45.

30

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend the complaint is granted for the purposes of deciding the Rule 60(b) motion.  Plaintiffs' motion to modify the judgment is granted in part and the Court's April 28, 2006 judgment is modified to reinstate the Plaintiffs' equal protection claim based on selective prosecution for violations of the Town's Freshwater Wetlands Law.

Counsel are directed to appear on Friday, June 1, 2007, at 9:15 a.m. for further proceedings.

SO ORDERED.

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

White Plains, New York
Date: May 16, 2007

Copies of this order have been sent to the following:

David O. Wright, Esq.
1820 Commerce Street
Yorktown Heights, New York 10598

Ralph Schoene, Esq.
Voute, Lohrfink, Magro & Collins, LLP
170 Hamilton Avenue
White Plains, New York 10601

31